# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 20, 2022

Lyle W. Cayce
Clerk

No. 21-60749

John Quincy Adams, *on behalf of themselves and all others situated*;
Alean Adams, *on behalf of themselves and all others situated*,

*Plaintiffs—Appellants*,

*versus*

Pearl River Valley Water Supply District; Jennifer
Hall; Ben Evans; Billy Cook; Jack Winstead; Samuel
Mitchell; Lonnie Johnson; Tedrick Ratcliff; Kenny
Windham; Bruce Brackin; Phillip Crosby; John Pittman;
Kenny Latham; W. C. Gorden,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:20-CV-469

Before King, Elrod, and Southwick, *Circuit Judges*.

Per Curiam:*

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-60749

Two Mississippi residents sued a state agency and its directors. They alleged violations of federal and state law arising out of that agency's failure to notify them of the sale of property they formerly owned. The plaintiffs cannot show an imminent threat of injury. We AFFIRM the dismissal but conclude that the dismissal must be revised to one without prejudice. Thus, we also VACATE and REMAND.

FACTUAL AND PROCEDURAL BACKGROUND

John Quincy Adams and Alean Adams are Mississippi residents who once owned and lived on a parcel of land near what is now the Ross Barnett Reservoir. The Reservoir is the second largest lake in the state. CALEB SMITH, *Lakes*, MISS. ENC. 702–03 (2017). In 1958, the Mississippi Legislature created the Pearl River Valley Water Supply District, tasking it with acquiring necessary real property, creating the Reservoir by constructing a dam on the Pearl River, and then managing the lake and adjacent acquired land.[1] MISS. CODE. ANN. § 51-9-103. The waters released from the dam flow unvexed to the Gulf of Mexico, first along the eastern limits of the nearby city of Jackson, then southerly until forming, for the last 100 miles or so, the boundary between Mississippi and Louisiana.

The District is empowered "[t]o acquire by condemnation all property of any kind . . . within the project area." MISS. CODE. ANN. § 51-9-121(f). If the District decides that any of the land it has acquired is to be "rented, leased, or sold . . . for the purpose of operating recreational facilities

---

[1] The District describes itself this way: "The Pearl River Valley Water Supply District is the state agency created to construct and manage the 33,000-acre Barnett Reservoir and the 17,000 acres surrounding the lake. . . . A Board of Directors approves plans and projects for the District. The board members represent four state agencies and five counties that it serves in Central Mississippi." *About Us*, BARNETT RESERVOIR, PEARL RIVER VALLEY WATER SUPPLY DISTRICT, https://www.the rez.ms.gov/Pages/About.aspx.

thereon for profit," the District must solicit bids, determine the highest bid, then notify the former owner of the "amounts, terms, and conditions" of that bid. *Id.* A former owner then will "have the exclusive right at his option, for a period of thirty (30) days after the determination of the highest and best bid by the board, to rent, lease, or purchase said site or plot of land by meeting such highest and best bid and by complying with all terms and conditions of the renting, leasing, or sale as specified by the board." *Id.*

In July 2020, the Adamses filed their complaint in the United States District Court for the Southern District of Mississippi. Six weeks later they filed an amended complaint. The defendants include the thirteen directors of the District in their official capacities, and the complaint alleged numerous federal and state law claims.

According to the amended complaint, the District acquired the relevant land in two separate deeds from the plaintiffs and other family members in 1960. One transaction involved 2 acres on which the plaintiffs lived, while the other was a conveyance of 118 acres to the District by John Quincy Adams's father. Later in his father's will, John Quincy Adams received a 1/11 share of any property in which his father "may have [had] an interest." The amended complaint sets out claims for a class of all former owners of property that was acquired by the District. No motion to certify the class was ever filed. In general terms, without ever identifying any particular transaction, the amended complaint alleged that the District has failed to provide the requisite notice to former owners when it sells or leases property that it acquired.

The Adamses claim that the District violated Section 51-9-121(f) when it failed to give them notice of pending sales or leases of their former property. The Adamses further alleged that these violations form the basis of Fourteenth Amendment procedural and substantive due process violations

and Fifth Amendment Takings Clause violations, enforceable under 42 U.S.C. § 1983. The Adamses requested a declaratory judgment that the District's sales and leases of property without notice were ongoing constitutional violations and asked the court to fashion whatever injunctive relief it deemed necessary to correct the violations going forward, including ancillary monetary relief.

In September 2020, the District moved to dismiss. With their opposition filed in October, the plaintiffs included ten exhibits reflecting some past advertisements by the District for bids on property (there is no assertion this was the plaintiffs' property) along with other evidence. In October 2020, counsel for the plaintiffs filed a response which contains, as far as we can tell, the only reference to the District's sale or lease of part of the 118 acres. The claim was that a residential subdivision is on part of the former family tract. In February 2021, an affidavit from each named plaintiff was filed. The affidavits gave more details on the family's sale of property to the District, including their doing so only on threat of condemnation, and also some details on the probate of the will of John Quincy Adams's father. The only allegation about a specific sale or lease by the District is in John Quincy Adams's affidavit. In one sentence, he claims that at some point after the sale, a church "was built on *or near* our land deeded" to the District (emphasis added.) The affidavit also asserts that the District never notified them of an opportunity to match the highest bid on the property. There is nothing in the affidavits about a subdivision on any of the father's former land nor when the District offered any of their former property for public bidding.

In September 2021, the district court dismissed the lawsuit on the basis that there was no jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). The court concluded that the District was entitled to sovereign immunity and that the plaintiffs failed to show that an exception for injunctive relief announced

in *Ex parte Young*, 209 U.S. 123 (1908), applied here. Consequently, the action was dismissed. The Adamses timely appealed.

## DISCUSSION

This court "review[s] Eleventh Amendment immunity determinations, like other questions of subject matter jurisdiction, *de novo* as a question of law." *United States v. Texas Tech Univ.*, 171 F.3d 279, 288 (5th Cir. 1999). The plaintiffs filed several exhibits and also two affidavits. The district court did not explicitly rely on any of that evidence when dismissing the case. If the court did rely in some manner, there was no error in doing so. When considering a Rule 12(b)(1) motion, a district court may go beyond the pleadings to affidavits and other evidence to determine its jurisdiction. *See Williamson v. Tucker*, 645 F.2d 404, 413–14 (5th Cir. 1981).

At the 12(b)(1) stage, the plaintiffs bear the burden of demonstrating jurisdiction. *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). This court, though, can affirm "on any grounds supported by the record, including a party's lack of standing." *Hosein v. Gonzales*, 452 F.3d 401, 403 (5th Cir. 2006). Although the district court analyzed the case on the basis of sovereign immunity, we instead will analyze standing, which can "significantly overlap" that analysis. *See City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019) (quotation marks and citation omitted).

A litigant seeking redress in federal court must show that he has standing to pursue his claims. *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). To establish standing, a plaintiff must demonstrate an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010).

Litigants must also demonstrate standing with respect to the *type* of relief they seek. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). The

Adamses recognize that they must seek prospective injunctive relief to even attempt to escape the state's sovereign immunity defense. To proceed with such a claim for prospective injunctive or declaratory relief, a plaintiff must demonstrate continuing harm or a "real and immediate threat of repeated injury in the future." *Society of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir. 1992). The threat of future injury must be "certainly impending"; mere "[a]llegations of *possible* future injury" do not suffice. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis omitted) (quotation marks and citations omitted). Past wrongs, of course, can be "evidence bearing on whether there is a real and immediate threat of repeated injury," but alone they may be insufficient to establish standing for prospective relief. *See Crawford v. Hinds Cnty. Bd. of Supervisors*, 1 F.4th 371, 376 (5th Cir. 2021) (quoting *Lyons*, 461 U.S. at 102).

*Lyons* is particularly relevant to our analysis. There, the Supreme Court considered whether a plaintiff had standing to pursue prospective relief against police officers who had performed an illicit chokehold on him. *See Lyons*, 461 U.S. at 105. The Court noted that his standing to pursue that relief "depended on whether he was likely to suffer future injury from the use of the chokeholds by police officers." *Id.* In concluding that he could not make such a showing, the Court noted that the alleged incident — which occurred only five months earlier — did "nothing to establish a real and immediate threat that he would again be stopped" and subjected to that method of restraint. *Id.*

Here, although the Adamses purport to act on behalf of a class, no motion to certify was filed. The Adamses must demonstrate that *they* have been injured, regardless of any class certification, and we will consider the allegations only as to them. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016). We identify two relevant assertions. First, John Quincy Adams submitted an affidavit stating that the two acres sold to the district in 1960

were subsequently sold or leased and notice was not given.  Second, the plaintiffs allege that John Quincy Adams's father, Joseph, sold 118 acres of land to the District, some of which were later sold or leased.  Further, 15 named heirs, including John Quincy Adams, were not given notice.

The Adamses' response in opposition to the District's motion to dismiss contains only nonspecific allegations of "ongoing present and future development" of the District's land.  We are not required, though, to accept "a legal conclusion couched as a factual allegation," and we instead look to the actual facts alleged.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  The Adamses identify only a possible *past* wrong: they "have suffered and been deprived of statutory notice of the impending lease or sale" of their former property.  They do not allege, plausibly or otherwise, that there is a real and immediate possibility that the property will be leased or sold in the future.

Once any claims for monetary relief were properly dismissed because of sovereign immunity, all that remains was in essence a demand for the court to order the District to comply with state law in the future as to any of the family's former land.  Even if the Adamses' rights were violated in the past, the Adamses have at best offered "[a]llegations of *possible* future injury" that they have not claimed is imminent, or "*certainly impending*," or anything other than speculative.  *See Clapper*, 568 U.S. at 409 (quotation marks and citation omitted).

We uphold the dismissal of the complaint for lack of standing.  The complaint, though, should not have been dismissed with prejudice.  The suit was dismissed on a Rule 12(b)(1) motion.  If the court did not have jurisdiction, it could not enter an order on the merits; declaring that the plaintiff cannot bring another suit is a merits decision.  *Heaton v. Monogram Credit Card Bank of Ga.*, 231 F.3d 994, 1000 (5th Cir. 2000).

No. 21-60749

We AFFIRM the dismissal but VACATE and REMAND for the limited purpose of allowing the district court to enter a revised order dismissing the claims without prejudice.